UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:24-cv-81527-RLR

EDMUND TERRY, Individually and
on behalf of a Putative Class,

       Plaintiffs,

vs.

WELLS FARGO BANK, N.A., a Delaware
Corporation,

       Defendant.

_____/

**SECOND AMENDED PUTATIVE CLASS ACTION COMPLAINT**

Plaintiff, EDMUND TERRY, by and through his undersigned attorneys, sues Defendant,

WELLS FARGO BANK, N.A., a Delaware Corporation and alleges:

1.     This is an action for injunctive relief and damages arising out of Defendant's

relationship with the Plaintiff and others as the holders of checking accounts with the Defendant,

which damages, excluding attorneys' fees and costs, are in an amount in excess of the minimum

jurisdictional limits of this Court.

2.     Plaintiff is a resident of Palm Beach County, Florida and is sui juris.

3.     Defendant is a Delaware corporation with its principal place of business in San

Francisco, California and with registered offices at 2711 Centerville Road, Suite 400, Wilmington,

Delaware 19808.

4.     Defendant is an American multi-national financial services company operating in

35 countries and providing banking and related services to over 70 million customers worldwide.

TERRY V. WELLS FARGO, ETAL.
Second Amended Complaint

Defendant does provide and has been providing financial services, including checking account services to consumers through offices in Palm Beach County, Florida, at all times relevant hereto.

5.      Defendant held itself out as providing a secure and reliable means to safeguard the financial assets of consumers in general, particularly including the Plaintiff and others similarly situated, and to facilitate the transfer of financial assets from its customers to designated third parties through standard checking account services, including assurances that the highest degree of care would be exercised in permitting payments from the checking accounts of its customers only as directed.

6.      In reliance on Defendant's representations, Plaintiff entrusted financial assets to the Defendant by depositing those assets in a checking account managed by the Defendant.  Defendant accepted Plaintiff's repose of trust in it and undertook to exercise the highest degree of care in safeguarding the Plaintiff's assets.

7.      The depositor-bank relationship created by the Plaintiff entrusting his financial assets in a checking account administered by the Defendant, established a fiduciary duty on the part of the Defendant in favor of the Plaintiff, such that when the Plaintiff directed the transfer of assets from his account to a specifically designated third party by identifying that third party as the payee on a check drawn on Plaintiff's account with the Defendant, Defendant was obliged to exercise the highest duty of care in assuring that the funds directed to be transferred were, in fact, transferred in accordance with the Plaintiff's direction.

8.      On or about September 6, 2023, Plaintiff issued Check Number 11458 in the amount of $19,878.00 payable to Cumberland County Trustee for the purpose of satisfying a

TERRY V. WELLS FARGO, ETAL.
Second Amended Complaint

property tax obligation.  See Exhibit A.  Plaintiff mailed the check through the U.S. Postal Service for delivery to the payee and had every reason to believe that it would be delivered to the payee as addressed.

9.      On or about September 30, 2023, Defendant issued an Account Statement to Plaintiff reflecting that Check Number 11458 in the amount of $19,878.00 had been cashed on September 11, 2023.  The Account Statement (attached as Exhibit B) omits any reference to the identity of the payee, leading the Plaintiff to believe that the check had been delivered as intended and that the check had been negotiated by the payee to satisfy Plaintiff's tax obligation.

10.      In August of 2024, Plaintiff received a Second Tax Notice (attached as Exhibit C) informing Plaintiff for the first time that his property tax obligation to Cumberland County had not been satisfied and triggering immediate action on his part to investigate the surrounding circumstances.

11.      On August 9, 2024, Plaintiff issued Check Number 11558 in the amount of $19,878.00 payable again to Cumberland County Trustee for the purpose of attempting again to satisfy the same property tax obligation.  See Exhibit D.

12.      On August 9, 2024, nearly 11 months after issuing Check Number 11458 to Cumberland County Trustee, Plaintiff requested and received from Defendant a photocopy of Check Number 11458 as it was cashed by the Defendant (See Exhibit E), and Plaintiff was then alerted for the first time that Check Number 11458 had apparently been intercepted prior to its delivery to Cumberland County Trustee and had been altered changing the payee from Cumberland County Trustee to "Debra Amador," a person unknown to Plaintiff.

3

TERRY V. WELLS FARGO, ETAL.
Second Amended Complaint

13.     Plaintiff promptly reported the unauthorized alteration of his check to Defendant and requested a refund of the $19,878.00 loss that he sustained.

14.     Defendant refused to compensate the Plaintiff for his loss and has informed Plaintiff for the first time that it is its policy to refuse to accept responsibility for any loss arising out of or related to the alteration, misuse, forgery or other irregularity in the processing of a check unless such irregularity is brought to its attention within 30 days of the issuance by Defendant of its Account Statement to the Plaintiff.   This policy is enforced by the Defendant without regard to the complete absence of circumstances placing customers on notice of any irregularity in the processing of their checks and regardless of the complete absence of information in the Account Statement alerting a customer to any irregularity in the account. (See Exhibit F).

15.     Check washing fraud is an increasingly widespread criminal activity that involves altering checks by erasing details to allow checks to be rewritten, for the purpose of enabling fraudulent withdrawals from the victim's bank account.  The proliferation of check washing is very well-recognized within the banking industry.

16.     Although technology exists to deter and detect check washing (such as printing checks on heat detection paper with high-resolution borders, complex colors and foil holograms, use of gel pens or use of wash-resistant indelible ink), the Defendant has negligently failed to implement or advise its checking account customers of the need for or availability of these security methods for the protection of the assets of its customers, including the Plaintiff.

17.     In addition to failing to warn customers of the need for protection against check washing and to affirmatively guard against check washing, the Defendant has encouraged its

4

TERRY V. WELLS FARGO, ETAL.
Second Amended Complaint

proliferation by imposing arbitrary time limitations on its acceptance of check fraud complaints and failing to provide its customers with the means by which to discover check fraud occurrences within those time limitations. That is; by adopting the cost-saving practice of discontinuing providing checking account customers with copies of their cancelled checks along with monthly account statements, those customers have no means of comparing the checks that were cashed with the checks as originally written. The result is that the Defendant escapes responsibility for the hundreds of millions of dollars in losses sustained by checking account customers that occur annually through the delayed discovery and reporting of check washing losses which instead become the burden of innocent banking customers such as the Plaintiff and other similarly positioned checking account customers.

18.     Compounding the injury inflicted on its check washing victims, the Defendant uses the circumstance of such victimization to suggest that "fraud protection services" can be added to the customer's account by the Defendant; however, subsequent inquires of the Defendant confirm that no such additional services exist.

19.     Section 4-401 of the Uniform Commercial Code (UCC) provides that a bank can only charge those items which are "properly payable," which means that the charge was fully authorized by the person who wrote the check. Accordingly, when the bank pays on a charge against a customer's account based on a fraudulently altered and/or forged check, the charge cannot be properly payable. The bank is obliged to reimburse the loss to the account holder even when the check was difficult or impossible to detect through fraud prevention systems, because the bank's responsibility to the account holder is not a negligence standard. Instead, as a general

TERRY V. WELLS FARGO, ETAL.
Second Amended Complaint

rule, the UCC places a duty on the bank of the payor account to make its account holder whole in

the event it pays on a charge made through a fraudulent check.  The policy rationale behind placing

the initial liability on the drawee bank rests on the premise that the relationship between the bank

and the account holder is contractual in nature, and the bank's paying a charge based on a

fraudulent check violates its agreement with the account holder only to pay those properly payable

charges.

      20.    UCC Section 4-406 places a duty on the account holder to discover and notify the

account holding bank of a forgery or alteration.  The UCC mandates that pursuant to this duty, an

account holder must exercise reasonable promptness in discovering and reporting the unauthorized

charge but does not define what is considered reasonable promptness.  Further, the UCC requires

that account holders exercise ordinary care in handling the checks.  Under UCC Section 3-406, if

a bank can show that the account holder failed to exercise ordinary care, and that failure

substantially contributed to an alteration of a check or to the forgery of a signature on the check,

that customer may be precluded from making a claim against the bank for reimbursement of that

loss.  However, the bank has the burden to prove that the customer somehow failed in their duties

and contributed to the fraud.  Defendant's procedures as described preclude the account holder

from exercising any degree of care in discovering the fraudulent alteration of a check within the

time limits imposed by the Defendant.

      21.    Defendant's standard practice of failing to provide photocopies of canceled checks

along with its monthly account statements, together with its policy to routinely deny all fraudulent

check claims not asserted within 30 days even when it is impossible for the fraud victim to have

TERRY V. WELLS FARGO, ETAL.
Second Amended Complaint

any knowledge of a fraudulent check alteration of the payee's name, precludes the filing of a timely

fraud complaint by the account holder and evades the Defendant's fiduciary obligation to the

Plaintiff to only pay those charges against the Plaintiff's account which are properly payable.

<u>CLASS ALLEGATIONS</u>

22.    This is a Class action claim against the Defendant brought by the Plaintiff on

behalf of himself individually and the following Class of persons:

> All of Defendant's checking account holders in the State of Florida who
>
> have sustained a loss within the past four years as a consequence of the
>
> Defendant's payment of a check which was fraudulently altered by
>
> changing the name of the payee where the account holder was not on notice
>
> of the alteration until 30 days or more following the receipt of a monthly
>
> account statement resulting in the Defendant's denial of the fraud victim's
>
> claim for reimbursement on the basis that the claim was untimely.

23.    Upon completion of discovery with respect to the scope of the Class, Plaintiff

reserves the right to amend the Class definition.

24.    Plaintiff sues on his own behalf and on behalf of the Class pursuant to Florida Rule

of Civil Procedure 1.220.

25.    <u>Numerosity</u>.  Plaintiff does not know the exact size of the Class or the identity of

Proposed Class members, since such information is in the exclusive control of and readily

TERRY V. WELLS FARGO, ETAL.
Second Amended Complaint

accessible to the Defendant.  However, upon information and belief, given the number of bank

branches of the Defendant within the State, the number of checking accounts maintained and

serviced by the Defendant at each branch, and the public media reports of the proliferation of check

washing fraud schemes on a national and international level involving reporting annual losses

substantially exceeding One Hundred Million Dollars, it is highly probable that the proposed Class

is so numerous that joinder of all members is impractical.

26.   Commonality.  All members of the Class have been subject to and affected by the

Defendant's standard policies, practices and procedures uniformly applied to all of Defendant's

checking account holders as detailed herein.  There are common questions of law and fact that are

applicable to the claims of all Class members who have sustained unreimbursed check fraud losses,

and those common questions predominate over any questions affecting any individual Class

members such that a Class Action is the superior method for achieving the fair and efficient

adjudication of the controversy, including *inter alia*, the following:

a.   Does the Defendant breach its fiduciary duty to the Defendant's checking

account holders by denying them a reasonable opportunity to discover the

alteration of the identity of check payees, when monthly account statements do

not include either copies of cancelled checks or identification of the check

payees?

b.   Does the Defendant breach its fiduciary duty to the Defendant's checking

account holders through the enforcement of a policy that precludes

reimbursement to its check fraud victims who are unable to assert a check fraud

8

TERRY V. WELLS FARGO, ETAL.
Second Amended Complaint

> claim within 30 days of receipt of a monthly account statement because the
> check fraud cannot reasonably be discovered within that time limitation?
>
> c.  Does the Defendant breach its fiduciary duty to the Defendant's checking
> account holders by failing to employ available technology to deter and detect
> check washing?
>
> d.  Whether the Court can enter declaratory and injunctive relief?
>
> e.  What is the proper measure of compensatory damages for the unreimbursed
> check fraud losses sustained by the Class members?
>
> f.  Whether and in what amount the Class is entitled to recover attorneys' fees and
> costs?
>
> g.  Whether and in what amount punitive damages should be imposed against the
> Defendant.

27.    Typicality.  The individual claims of the Plaintiff are typical of the claims of the
Class and do not conflict with the interests of any member of the Class, in that the Plaintiff and
other members of the Class were subject to the same uniform abusive practices of the Defendant.
The Plaintiff and other Class members seek identical remedies under identical legal theories, and
there is no antagonism or material factual variation between Plaintiff's claims and those of the
Class.

28.    Adequacy.  The Plaintiff is a Florida resident and a sophisticated businessperson
who will fairly and adequately represent the interest of the Class.  He is fully cognizant of his

TERRY V. WELLS FARGO, ETAL.
Second Amended Complaint

responsibilities as a Class Representative, and he has retained experienced counsel fully capable

of and intent upon vigorously pursuing this action.

29.     Plaintiff brings this action under Rule 1.220(b)(3) because the questions of law and

fact common to his claims and the claims of each member of the Class predominate over any

question of law or fact affecting only individual members of the Class.   Additionally, the

prosecution of separate claims, by or against individual members of the Class would create a risk

which would, as a practical matter, be dispositive of the interest of other members of the Class

who are not parties to the adjudication, or would substantially impair or impede the ability of other

members of the Class and the Subclass who are not parties to the adjudication to protect their

interests. Class Representation is therefore clearly superior to other available methods for the fair

and efficient adjudication of this controversy.

30.     Plaintiff brings this action under Rule 1.220(b)(2) because the Defendant has acted

or refused to act on grounds generally applicable to all members of the Class, thereby making final

injunctive and/or declaratory relief concerning the Class as a whole appropriate.   In the absence of

appropriate injunctive and/or declaratory relief, the Defendant will continue to violate Florida

statutory and common law.   The Defendant's conduct towards the Plaintiff and other members of

the Class makes certification under Rule 1.220 (b) (2) appropriate.

31.     The prerequisites to maintaining a Class action for injunctive relief exist: If

injunctive relief is not granted, great harm and irreparable injury to Plaintiff and the members of

the Class will continue; and Plaintiff and the members of the Class have no adequate remedy at

law for the injuries which are threatened to recur, in that, absent action from this Court, Defendant

TERRY V. WELLS FARGO, ETAL.
Second Amended Complaint

will continue to breach its fiduciary duties to its checking account holders, violate state law, and

cause damage to Plaintiff and the Class.

32.     Defendant's actions are generally applicable to the Class as a whole, and Plaintiff

will seek, *inter alia*, equitable remedies with respect to the Class as a whole.

## COUNT I--BREACH OF CONTRACT

33.     Plaintiff re-alleges each of the material allegations of Paras.1 through 32 as if

each were fully set out herein and further alleges as follows:

34.     Plaintiff, individually, and on behalf of all members of the Class asserts a

common law claim against the Defendant for breach of contract.

35.     The Defendant knowingly received funds from Plaintiff and each member of the

Class and undertook to safeguard those funds in a checking account from which payments would

be made only in accordance with the account holder's fully authorized directions as provided in

the previously cited sections of the UCC.

36.     Paying on a charge against the customer's account based on a fraudulent altered

check when the alteration was avoidable and detectable and the detection of the fraud was

unreasonably delayed by the Defendant's own business practices, materially breaches the duty

owed by the Defendant to its checking account customers, including the Plaintiff and other

members of the Class.

37.     As a direct and proximate consequence of the Defendant's material breaches of

the contractual duty as alleged herein, Plaintiff and members of the Class have sustained losses

TERRY V. WELLS FARGO, ETAL.
Second Amended Complaint

by way of unreimbursed, unauthorized payments from their checking accounts, plus the loss of

use of those funds from the time of their improper payment.

 

WHEREFORE, Plaintiff and the members of the Class pray that this Honorable Court

award damages for Defendant's breach of its contractual duties; enter a declaratory judgment

finding that the Defendant's enforcement of an arbitrary time limit for submission of claims

arising out of the fraudulent alteration of its checking account customers' checks is

unenforceable and further requiring the return of all ill-gotten gains acquired by enforcing its

check fraud policies; and granting such other relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff and the members of the Class demand trial by jury as to all claims so triable as a

matter of right.

Dated this _____10TH_____ day of February 2025.

JOHN SCAROLA
Florida Bar No.: 169440
Attorney E-Mail: jsx@searcylaw.com and
mmccann@searcylaw.com
Primary E-Mail: _scarolateam@searcylaw.com
SEARCY DENNEY SCAROLA BARNHART &
SHIPLEY, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
Phone: 561-686-6300
Fax:    561-383-9451
*Attorneys for Plaintiff*

12

TERRY V. WELLS FARGO, ETAL.
Second Amended Complaint

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on February ___10th___, 2025.  I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF.

JOHN SCAROLA
Florida Bar No.: 169440
Attorney E-Mail:  jsx@searcylaw.com and
mmccann@searcylaw.com
Primary E-Mail: _scarolateam@searcylaw.com
SEARCY DENNEY SCAROLA BARNHART &
SHIPLEY, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
Phone: 561-686-6300
Fax:    561-383-9451
*Attorneys for Plaintiff*

13

## CUMBERLAND COUNTY
Kim Wyatt, Trustee
2 South Main St. • Suite 111 • Crossville, TN 38555
931-484-5730

*FORWARDING SERVICE REQUESTED*

**CUMBERLAND COUNTY**
**PROPERTY TAX NOTICE - 2023**

| DIST | MAP | GP | C-MAP | PARCEL | SP-INT | CO | CI |
|------|-----|----|-------|--------|--------|----|----|
| 01 | 100J | E | 100J | 021.00 | 000 | 018 | 177 |

| Tax Receipt # | Total Due |
|---------------|-----------|
| 63989 | $19,500.00 |

**Property Address**
NORTH MAIN ST

*Make checks payable to: CUMBERLAND COUNTY TRUSTEE*
Amount Remitted: _____

PAID #19878.00 9-6-23 ck # 11458

**********AUTO**MIXED AADC 373     8     125
WOODMERE MALL LLC
211 W ALEXANDER PALM RD
BOCA RATON, FL 33432-7906

CUMBERLAND COUNTY
KIM WYATT, TRUSTEE
2 South Main St., Suite 111
Crossville, TN 38555-4508

☐ Indicate Address Change on Reverse Side

*Please return this portion with your payment. Please write receipt number on your check.*

**Taxes are due upon receipt.**
To avoid interest, taxes must be paid by February 29, 2024.

*If a receipt is required, please enclose a self-addressed stamped envelope. Keep this portion for your records.*

## CUMBERLAND COUNTY 2023 PROPERTY TAX NOTICE
Kim Wyatt, Trustee

| DIST | MAP | GP | C-MAP | PARCEL | SP-INT | CO | CI |
|------|-----|----|-------|--------|--------|----|----|
| 01. | 100J | E | 100J | 021.00 | 000 | 018 | 177 |

# 2023

| TAX RECEIPT # | TOTAL DUE |
|---------------|-----------|
| 63989 | $19,500.00 |

**Property Address**
NORTH MAIN ST

**Classification**
Commercial

**Subdivision**

| Lot | Acres | EQ Factor |
|-----|-------|-----------|
| | 20.60 | |

**Additional Description**
WOODMERE MALL SHOPPING CENTER

| | |
|---|---|
| Land Value | $1,790,000 |
| Improvement Value | $2,505,100 |
| Personal Property | $0 |
| Appraised Value | $4,295,100 |
| Assessment | 40% |
| Assessed Value | $1,718,040 |
| Tax Rate | 1.1350 |
| County Tax Amount | $19,500.00 |
| Roll Back Taxes | $0.00 |
| Total Taxes Due | $19,500.00 |

### YOUR PAYMENT OPTIONS ARE:

- **MAIL / OFFICE:** 2 South Main St., Ste. 111, Crossville, TN 38555, please include receipt number(s) on check.
- **Office Hours** 8am - 4 pm Monday-Friday
- Use our **Dropbox** after hours located in front of office
- **ONLINE / PHONE:** tennesseetrustee.org or toll free at 833-591-7247

*Vendor fees will apply*

**PLEASE SEE BACK OF THIS NOTICE FOR ADDITIONAL INFORMATION**





Scan to view parcel and pay

Paid w/ Check Number_____
Amount of Check:_____
Date:_____
Total Due:_____
Amount Remitted:_____

*Make checks payable to: CUMBERLAND COUNTY TRUSTEE*
If a receipt is required, please enclose a self-addressed stamped envelope. Keep this portion for your records.

Ex. A

# Navigate Business Checking℠

September 30, 2023 ■ Page 1 of 5



016386 1 AV 0.488 209203

||¦|¦¦|¦||¦|¦|¦||¦¦¦¦¦|¦|||¦|¦¦||¦¦|¦|¦¦¦|¦¦|||¦¦¦¦¦¦|¦¦||¦¦¦¦||¦¦¦¦¦¦|¦¦¦¦¦¦¦¦|¦||
EDMUND TERRY
DBA WOODMERE MALL SHOPPING CENTER
211 W ALEXANDER PALM RD
BOCA RATON FL 33432-7906

**Questions?**

Available by phone Mon-Sat 7:00am-11:00pm
Eastern Time, Sun 9:00am-10:00pm Eastern Time:
We accept all relay calls, including 711
   **1-800-CALL-WELLS** (1-800-225-5935)

   En español: 1-877-337-7454

Online: wellsfargo.com/biz

Write: Wells Fargo Bank, N.A. (287)
   P.O. Box 6995
   Portland, OR 97228-6995

**Your Business and Wells Fargo**

Visit wellsfargo.com/digitalbusinessresources to explore tours, articles, infographics, and other resources on the topics of money movement, account management and monitoring, security and fraud prevention, and more.

**Account options**

A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com/biz or call the number above if you have questions or if you would like to add new services.

---

September 30, 2023 ■ Page 3 of 5

WELLS FARGO

**Summary of checks written** (checks listed are also displayed in the preceding Transaction history)

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|--------|------|--------|
| 11453 | 9/1 | 170.00 | 11458 * | 9/11 | 19,878.00 | 11462 | 9/22 | 20.00 |
| 11454 | 9/6 | 1,925.00 | 11459 | 9/18 | 1,306.35 | 11463 | 9/26 | 69.91 |
| 11455 | 9/11 | 11,755.00 | 11460 | 9/19 | 213.13 | 11464 | 9/22 | 2,925.00 |
| 11456 | 9/6 | 975.00 | 11461 | 9/20 | 1,977.50 | | | |

| Date | | Description | | Amount | Balance |
|------|--|-------------|--|--------|---------|
| 9/11 | | 11455 Check | | 11,755.00 | |
| 9/11 | | 11458 Check | | 19,878.00 | 198,660.67 |
| 9/15 | | Deposit From Bank By Mail | 900.00 | | 199,560.67 |
| 9/18 | | 11459 Check | | 1,306.35 | 198,254.32 |
| 9/19 | | 11460 Check | | 213.13 | 198,041.19 |
| 9/20 | | 11461 Check | | 1,977.50 | 196,063.69 |

Ex. B

**KIM WYATT, TRUSTEE**
2 South Main St. • Suite 111
Crossville, TN, 38555
931-484-5730

*FORWARDING SERVICE REQUESTED*

*PAID $ 19878⁰⁰ 8-9-24 ck # 11558*

| DIST | MAP | GP | C-MAP | PARCEL | SP-INT | CO |
|------|-----|-----|-------|--------|--------|-----|
| 01 | 100J | E | 100J | 021.00 | 000 | 018 |

| 2023 Receipt# | Due 8/30/20 |
|---------------|-------------|
| 63989 | $21,255.00 |

**Property Address:**
North Main St

```
*********AUTO**MIXED AADC 375   18   274   4259  1 MB 0.622
WOODMERE MALL LLC
211 W ALEXANDER PALM RD
BOCA RATON FL 33432-7906
```

**CUMBERLAND COUNTY**
**KIM WYATT, TRUSTEE**
2 South Main St., Suite 111
Crossville, TN 38555-4508

*Please return this portion with your payment.*
*Your canceled check, along with your portion of this statement serves as your receipt.*          *Make checks payable to: Cumberland County*

# CUMBERLAND COUNTY 2023 SECOND TAX NOTI

| DIST | MAP | GP | C-MAP | PARCEL | SP-INT | CO | CT |
|------|-----|-----|-------|--------|--------|-----|-----|
| 01 | 100J | E | 100J | 021.00 | 000 | 018 | 177 |

| 2023 Receipt # | Due 8/30/2 |
|----------------|------------|
| 63989 | $21,255.0 |

**Property Address**
North Main St

**Classification**
Commercial

**Subdivision**

**Add'l. Description**

## 2023 COUNTY PROPERTY TAX 2ND NOTICE
To avoid additional fees, total must be paid by August 30. After
that date 1.5% penalties will be added.

| Lot | Acres | EQ Fa |
|-----|-------|-------|
|  | 20.60 | 0000 |

| | |
|---|---|
| Land Value | $1,790 |
| Improvement Value | $2,50 |
| Personal Property | |
| Total Property | $4,29 |
| Assessed Percent | |
| Assessed Value | $1,718 |
| Tax Rate | 1. |
| Rollback | $ |
| Current Taxes | $19,50 |
| Interest | $1,75 |
| Total Taxes Due by 8/30/2024 | $21,2 |

**NOTICE TO CUSTOMERS WHO HAVE SOLD THE PROPERTY (OR BUSINESS) WITH DELINQUENT REAL PROPERTY OR PERSONAL PROPERTY TAXES.**
Most 2023 property tax statements are mailed to the owner of record as of January 1, 2023, per Tennessee Code Annotated 67-5-2001 However, our office does attempt to notify "new owners" about property taxes, whenever possible. Agreements between the sellers and buyers of property are separate contracts and do not affect the official tax roll.

You can pay online at www.tennesseetrustee.org or our automated phone payment service 1-833-591-7247 (A processing fee is added to your payment for credit and debit cards). Cumberland County does not receive any of these fees.

The Trustee cannot waive interest charges for late payment of taxes. There is no exception provided in the law for a failure to receive a tax notice.

| | |
|---|---|
| **Kim Wyatt** | **Office Hours:** |
| **Cumberland County Trustee** | Mon-Fri 8:00am - 4:00pm |
| 2 South Main St. • Suite 111 | **Phone:** |
| Crossville, TN 38555-4508 | (931) 484-5730 |

Ex. C

**CUMBERLAND COUNTY**
Kim Wyatt, Trustee
2 South Main St. • Suite 111 • Crossville, TN 38555
931-484-5730

*FORWARDING SERVICE REQUESTED*


PERSONAL
PROPERTY

## CUMBERLAND COUNTY
### PROPERTY TAX NOTICE - 2023

| DIST | MAP | GP | C-MAP | PARCEL | SP-INT | CO | CI |
|------|------|-----|------|--------|--------|------|------|
| 01 | 100J | E | 100J | 021.00P | 026 | 018 | 177 |

| Tax Receipt # | Total Due |
|------|------|
| 63988 | $3.00 |

**Property Address**
WOODMERE MALL

Make checks payable to: CUMBERLAND COUNTY TRUSTEE

Amount Remitted:_____


********AUTO**MIXED AADC 573     I    123
WOODMERE MALL LLC
96 TERRY EDMUND
211 W ALEXANDER PALM RD
BOCA RATON, FL 33432-7906

CUMBERLAND COUNTY
KIM WYATT, TRUSTEE
2 South Main St., Suite 111
Crossville, TN 38555-4508

☐ Indicate Address Change on Reverse Side

Please return this portion with your payment. Please write receipt number on your check.

Taxes are due upon receipt
To avoid interest, turn back
be paid by February 29, 2024

---

If a receipt is required, please enclose
a self-addressed stamped envelope.
Keep this portion for your records.

## CUMBERLAND COUNTY 2023 PROPERTY TAX NOTICE
Kim Wyatt, Trustee

| DIST | MAP | GP | C-MAP | PARCEL | SP-INT | CO | CI |
|------|------|-----|------|--------|--------|------|------|
| 01 | 100J | E | 100J | 021.00P | 026 | 018 | 177 |

## 2023

| TAX RECEIPT # | TOTAL DUE |
|------|------|
| 63988 | $3.00 |

**Property Address**
WOODMERE MALL

**Classification**
Commercial

**Subdivision**

| Lot | Acres | EQ Factor |
|-----|-------|-----------|
|     |       | 1 |

**Additional Description**

| | |
|------|------|
| Land Value | $0. |
| Improvement Value | $0 |
| Personal Property | $1,000 |
| Appraised Value | $1,000 |
| Assessment | 30% |
| Assessed Value | $300 |
| Tax Rate | 1.1350 |
| County Tax Amount | $3.00 |
| Roll Back Taxes | $0.00 |
| Total Taxes Due | $3.00 |

### YOUR PAYMENT OPTIONS ARE:

- **MAIL / OFFICE:** 2 South Main St., Ste. 111, Crossville, TN 38555, please include receipt number(s) on check.
- **Office Hours 8am - 4 pm Monday-Friday**
- Use our **Dropbox** after hours located in front of office
- **ONLINE / PHONE:** tennesseetrustee.org or toll free at 833-591-7247

*Vendor fees will apply*

**PLEASE SEE BACK OF THIS NOTICE FOR ADDITIONAL INFORMATION**



Scan
to view
parcel and
pay



Paid w/ Check Number_____
Amount of Check:_____
Date:_____
Total Due:_____
Amount Remitted:_____

Make checks payable to: CUMBERLAND COUNTY TRUSTEE
If a receipt is required, please enclose a self-addressed stamped envelope. Keep this portion for your records.

---



NEW REPLACEMENT

**WOODMERE MALL SHOPPING CENTER**
**C/O WORLDWIDE PROPERTIES USA, INC.**
**EDMUND TERRY, REG. R.'E., BROKER**
211 W. ALEXANDER PALM RD., 561-368-2856
BOCA RATON, FL 33432
FAX 561-368-0130

11558
63-751/631 10500

DATE 5-9-24

PAY
TO THE
ORDER OF   CUMBERLAND County Trustee                $ 19878 00

NINETEEN THOUSAND  and Eight HUNDRED  and SEVENTY EIGHT and 00/100   DOLLARS

Wells Fargo Bank, N.A.
Florida
wellsfargo.com

63939 - 19500.00
63996     375.00
63988       3.00

FOR _____                                      Edmund Terry

⑈000011558⑈ ⑆063107513⑈ 209000 206356 ⑈

FX-D

Date: August 9, 2024          *Wells Fargo PhotoCopy Request*          Page 1 of 1

Reference: 1000299448054





| R/T Number | 06310751 | Processing Date | 20230911 |
| --- | --- | --- | --- |
| Sequence Number | 8529146695 | Amount | 19878.00 |
| Account Number | 02090002063561 | Check Number | 11458 |

```
Mail theft or stolen and "washed" and forged somehow.
Person put on check is a "Debra Amador" who so far is unknown.
Check was cashed on 9-11-2023. Originally made out to Cumberland
County Trustee (in TN.)...in handwriting ink.
```

Ex. E



**WELLS FARGO**

Claims Assistance Center
Check Fraud Claims
MAC D1118-02F
12301 Vance Davis Dr. Floor 02
Charlotte, NC 28269-7699

08/12/2024

XNCLMCDTKO 001815 SP 01

||||||ı|ı|ı|ı||ı|ı||ı|ı||ı|ı||ı||ı|ı||ı|ı||ı|ı|ı|ı|ı|

EDMUND TERRY
DBA WOODMERE MALL SHOPPING CENTER
211 W ALEXANDER PALM RD
BOCA RATON, FL 33432-7906

Subject: Resolution of your fraud claim
Claim #: 2024081200316

Dear EDMUND TERRY & DBA WOODMERE MALL SHOPPING CENTER:

We have completed our research of the unauthorized transaction(s) paid on your account. Although we cannot reimburse you because too much time passed before you contacted us about this fraud, we are providing important information to help you protect your account going forward.

**What you need to know**

- To ensure the security of your Wells Fargo bank account, your *Account Agreement* advises that you are responsible for reviewing your monthly account statements and letting us know *within 30 days* about any errors or unauthorized transactions. If you do not report any issues within that time, we consider your account statement to be correct and that you approve all the transactions.

- Because your account has been compromised, we can help you close it and open a new one, or you can talk with us about adding fraud protection services for your current account.

If you have questions, please call us at 1-877-548-9230, Monday through Friday, 7:00 a.m. to 12:00 a.m. Eastern Time. We can provide language assistance services, if you prefer.

Sincerely,

Claims Assistance Center

Ex F-1



[CLMPPEN6]002032|01|01|0|0|0|0]



Enterprise Complaints Management Office
PO Box 5133
Sioux Falls, SD 57117

October 3, 2024

Edmund Terry
211 W Alexander Palm Road
Boca Raton, FL 334327906

Subject: We're responding to your concerns
Wells Fargo case number: 06202409234996696
Account number ending in: 3561
Business name: Woodmere Mall Shopping Center

Dear Edmund Terry:

Thank you for contacting us. We completed our research and are providing details to address your concerns.

**What you need to know**

After reviewing your case, we have determined that we previously addressed your concern and did not find enclosed any new information that would change our response. We reviewed your account activity since our prior response and our decision remains the same.

**Fraud Claim**

During the course of our investigation, we have determined that claim number 2024081200316 in the amount of $19878.000 that was opened on August 12, 2024, which posted to your account on September 11, 2023, was denied. We are not able to reimburse you because too much time had passed before you notified us of the fraud check.

We sent out a letter to inform you of the denial on August 12, 2024, to the address we have on file.

As per your account agreement, on Page 29 under your responsibility to review account statements and notices and notify us of errors:

You are obligated to:

- Examine your account statement promptly and carefully.

- Notify us promptly of any errors.

We may collect personal data as part of the complaint resolution process. For the categories of personal data that Wells Fargo may collect and how we use it, see the Wells Fargo California Consumer Privacy Act Notice at Collection at https://www.wellsfargo.com/privacy-security/notice-of-data-collection/. See additional Wells Fargo privacy notices at https://www.wellsfargo.com/privacy-security/.

ECMO–BT129_Res_M_E_122023

Ex. F-2

- Notify us within 30 days after we have made your account statement available to you of any unauthorized transactions on your account. Note: If the same person has made two or more unauthorized transactions and you fail to notify us of the first one within this 30-day period. We won't be responsible for unauthorized transactions made by the same wrongdoer.

- Notify us within 6 months after we have made your account statement available to you if you identify anu unauthorized, missing, or altered endorsements on your items.

Please refer to the Deposit Account Agreement for more information; a full copy is available at your local Wells Fargo branch or online at wellsfargo.com, input your zip code, and then select Deposit Account Agreement.

For questions, you may contact Claims Assistance Center at 855-838-3679 during the hours of M - F 6:00 a.m. - 11:00 p.m. ET.

**Case status**

We have closed the case as of the date of this letter. If we receive additional information, we will open a new case to address any remaining or new concerns.

**How to contact us**

We appreciate the time and effort you took to contact us. If you have questions, you may reach us at 1-866-907-9913, Monday through Friday from 8:00 a.m. to 5:00 p.m. Central Time. We accept telecommunications relay service calls.

Sincerely,

Jet S.
Escalations Representative
Enterprise Complaints Management Office
PO Box 5133, Sioux Falls, SD 57117
Fax: 1-866-674-4123